# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

RAIMUNDO ANTONIO HOGAN,

        Petitioner,

v.                                  Case No.: 3:19-cv-767-TJC-JRK
                                             3:16-cr-139-TJC-JRK

UNITED STATES OF AMERICA,

        Respondent.

_____

## <u>ORDER</u>

This case is before the Court on Petitioner Raimundo Antonio Hogan's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Civ. Doc. 10, Amended § 2255 Motion).[1] A jury convicted Petitioner of possession of a firearm by a convicted felon, and the Court sentenced him to a term of 180 months in prison under the Armed Career Criminal Act (ACCA). Petitioner challenges his conviction and sentence based on the alleged ineffectiveness of trial counsel and <u>Rehaif v. United States</u>, 139 S. Ct. 2191 (2019). The United States has responded in opposition. (Civ. Doc. 12, Response to Amended § 2255 Motion). Petitioner filed a reply. (Civ. Doc. 13, Reply in Support of Amended § 2255 Motion).

---

[1]     Citations to the record in the criminal case, <u>United States v. Hogan</u>, No. 3:16-cr-139-TJC-JRK, will be denoted "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:19-cv-767-TJC-JRK, will be denoted "Civ. Doc. __."

Petitioner also submitted several other filings, including: (1) a request for leave to add a claim that 18 U.S.C. § 922(g)(1) is unconstitutionally vague as applied to him (Civ. Doc. 17), to which the United States responded (Civ. Doc. 19)[2]; (2) a motion to expand the record to include two letters Petitioner wrote the Court during the criminal proceedings (Civ. Doc. 38, Motion to Expand Record; see also Crim. Doc. 27-1, First Letter; Crim. Doc. 54-1, Second Letter), which the Court granted (Civ. Doc. 39); (3) supplemental authority for the ineffective assistance claims (Civ. Doc. 41); and (4) a motion for leave to add a claim of "actual innocence" (Civ. Doc. 42), which the United States opposes (Civ. Doc. 44), and which Petitioner filed a reply supporting (Civ. Doc. 45).

Under § 2255 Rule 8(a), the Court has determined that an evidentiary hearing is not necessary to decide the matter. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief). For the reasons below, Petitioner's Amended § 2255 Motion is due to be denied.

---

[2]     Petitioner also filed a reply in support of the vagueness claim. (Civ. Doc. 32). The Court granted Petitioner's request for leave to add the claim to the extent the Court would consider it along with those in his Amended § 2255 Motion. (Civ. Doc. 23).

## I.      Background

On September 21, 2016, a federal grand jury charged Petitioner with one

count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §

922(g)(1) and § 924(e). (Crim. Doc. 1, Indictment). The facts are summarized in

the Eleventh Circuit's opinion affirming his conviction and sentence:

> On February 26, 2016, while patrolling in Jacksonville, Officer James
> Mills spotted a driver without a seatbelt passing by in a Ford Explorer.
> Officer Mills radioed Officer John Faulkner and the two of them began to
> follow the car. The driver accelerated; Officer Mills turned on his lights
> and siren and gave pursuit while Officer Faulkner took a different road
> to try to get ahead of and cut off the Explorer. The Explorer slowed down
> and the passenger—Raimundo Hogan—jumped out of the car with a gun
> in his hand. Hogan threw the gun and ran, and Officer Mills chased him.
> The driver, Hogan's cousin Maurice, stayed in the car.
>
> Darien Thomas, a civilian observer riding along with Officer Mills, saw
> Hogan throw the gun and could see it lying on the ground. The gun
> remained there until Officer Mills returned from chasing Hogan
> (unsuccessfully), arrested Maurice, and then picked up the gun and
> placed it on top of his squad car. Officer Faulkner intercepted Hogan and
> arrested him. When Officer Faulkner arrived at the scene, he put the gun
> and other evidence into paper bags and placed the bags in the trunk of
> his squad car. There is some discrepancy over how Officer Faulkner got
> the gun: Officer Mills testified that he handed the gun directly to Officer
> Faulkner, while Officer Faulkner said that he took the gun from Officer
> Mills's squad car. But in any event, Officer Faulkner brought the gun to
> the property room back at the sheriff's office and filled out a property-
> storage card. He recorded the serial number as "KTV892." In a report
> that Officer Mills prepared regarding the traffic stop, he recorded the
> serial number as "KYU892."
>
> Special Agent Mark Latham from the Bureau of Alcohol, Tobacco,
> Firearms, and Explosives (ATF) tested the gun to determine whether it
> met the statutory definition of a firearm. He concluded that the gun had
> traveled in interstate commerce (one telling clue: it bore a "made in
> Austria" imprint) and that "if there was a projectile in the end of the
> casing it would have expelled it by the action of the explosive." Special
> Agent Latham's report listed the serial number as "KTV892," but it listed
> the gun as being related to the investigation of another individual,

3

"Jerminh Mose Johnson," rather than Hogan.

> An indictment charged that Hogan "did knowingly possess, in and affecting commerce, a firearm, that is, A Glock, .40 caliber pistol, serial number KTV892, after having been convicted of a crime punishable by imprisonment for a term exceeding one year." <u>See also</u> 18 U.S.C. § 922(g)(1). Hogan pleaded not guilty and went to trial. His first trial ended in a mistrial. His second trial ended in his conviction.

<u>United States v. Hogan</u>, 778 F. App'x 642, 643–44 (11th Cir. 2019).

During the second trial, Petitioner moved for judgment of acquittal (JOA), arguing that the evidence was insufficient to prove that he possessed the firearm charged in the Indictment. (Crim. Doc. 83, Trial Transcript Vol. I at 219–21). Petitioner's counsel, Susan Yazgi, argued that the serial number of the gun charged in the Indictment (KTV892) differed from the serial number Officer Mills wrote down in his police report (KYU892), suggesting that the gun charged in the Indictment was the wrong one. (<u>Id.</u> at 219–20). The United States responded that the discrepancy was a typo according to Officer Mills, and that Officer Faulkner recorded serial number KTV892 when taking the gun into evidence. (<u>Id.</u> at 221–22). The United States argued that the discrepancy went to the weight of the evidence, not whether it had established a prima facie case. (<u>Id.</u> at 222). The Court ruled that the evidence was sufficient to present the case to the jury and denied Petitioner's motion for a JOA. (<u>Id.</u>). During closing arguments, Petitioner raised the serial number discrepancy; argued that the gun belonged to the driver, Maurice Hogan; questioned the witnesses' reliability, particularly that of Officer Mills; and questioned the lack of forensic

4

or video evidence. (Crim. Doc. 84, Trial Transcript Vol. II at 16–35). The jury ultimately returned a guilty verdict. (Crim. Doc. 47, Jury Verdict).

After trial, Petitioner wrote a letter to the Court accusing Ms. Yazgi of lying to him about his case and withholding information from him. (Crim. Doc. 54-1, Second Letter).[3] Petitioner was apparently concerned about the serial number in Officer Mills's police report, which according to Petitioner "prove[d] that the firearm in [the] Federal Indictment IS NOT the firearm in [the] JSO [Jacksonville Sheriff's Office] … aresst [sic] & booking report." (Id.) (emphasis in original).

The Court held a hearing on March 14, 2017, to address the letter. (Crim. Doc. 54, Minute Entry; Crim. Doc. 87, Mar. 14, 2017 Hearing Transcript). Ms. Yazgi denied lying to Petitioner and denied withholding information from him. (Crim. Doc. 87 at 7–8). She stated that she had given Petitioner everything he requested, that she put on the defense Petitioner wanted to present, and noted that the argument about the firearm's serial number was litigated at trial. (Id.

---

[3]      Before trial, Petitioner wrote a letter to the Court in which he expressed dissatisfaction with Ms. Yazgi for (1) not filing a motion for "suppression of Indictment," (2) not issuing a subpoena for Officer Mills's dashboard video (which according to the trial testimony did not exist (Crim. Doc. 83 at 65)), and (3) not investigating undescribed information that allegedly would have proven Petitioner's innocence. (Crim. Doc. 27-1, First Letter). The First Letter prompted the Court to hold a hearing on November 14, 2016. (Crim. Doc. 27, Minute Entry of Nov. 14, 2016, Status Conference; Crim. Doc. 81, Nov. 14, 2016, Hearing Transcript; Crim. Doc. S-93, Transcript of In Camera Nov. 14, 2016 Hearing). At the end of the hearing, Petitioner stated that he wanted to withdraw the First Letter, that he knew Ms. Yazgi would assist him with a "proper defense," and that he wished to proceed to trial with Ms. Yazgi. (Crim. Doc. S-93 at 2, 4).

5

at 8). Still, Ms. Yazgi acknowledged that Petitioner no longer trusted her and recommended he be given a new attorney. (Id.). The Magistrate Judge expressed doubt that Ms. Yazgi, whose "reputation is stellar," would withhold information from her client, and he found no fault with Ms. Yazgi's handling of the case. (Id. at 8–9, 11). Even so, the Magistrate Judge agreed with Ms. Yazgi that the Court should appoint new counsel for Petitioner because the attorney-client relationship had broken down. (Id. at 10–12). The Court allowed Ms. Yazgi to withdraw from the case and appointed A. Russell Smith to represent Petitioner at sentencing. (Crim. Doc. 55).

The parties convened for the sentencing hearing on September 6, 2017. The Court noted that it had received another letter from Petitioner in July in which he complained about certain aspects of his case. (Crim. Doc. 85, Sentencing Transcript Vol. I at 3).[4] Mr. Smith explained that he had discussed the matter with Petitioner, and that Petitioner was concerned he had not received a physical copy of an ATF[5] report about the firearm, which contained the name "Jerminh Mose Johnson" in the title of investigation. (See id. at 4–5); (see also Civ. Doc. 1-1, Pet. Ex. A). Petitioner complained that discrepancies over the firearm's serial number and the name in the ATF report were not brought up at trial, which he believed deprived him of due process. (Crim. Doc.

---

[4]     This third letter does not appear on the Court's docket.

[5]     Bureau of Alcohol, Tobacco, and Firearms.

85 at 6–7). The prosecutor explained that the serial number discrepancy had been litigated at trial and that the name in the interstate nexus report was a typographical error. (Id. at 8–10). Mr. Smith and the prosecutor also noted that the ATF report had been disclosed to the defense before trial and was not newly discovered evidence. (Id. at 4–5, 8–9). However, because Petitioner was facing a 15-year mandatory minimum sentence, the Court agreed to review whether the trial evidence was sufficient to sustain the conviction given the issues Petitioner raised. (Id. at 11–12, 14–15). The Court also agreed to consider then-recent case law about the ACCA enhancement and concluded the hearing.

On September 22, 2017, the Court entered an order on Petitioner's ore tenus motion challenging the sufficiency of the evidence. (Crim. Doc. 64). The Court wrote:

> At his sentencing hearing on September 6, 2017, Defendant made an ore tenus post-trial motion challenging the sufficiency of the evidence in his case based on some typographical errors in two police reports concerning the identification of the firearm. While it appeared that Defendant's challenge was procedurally defective and likely untimely, given that Defendant is facing a fifteen year minimum mandatory sentence, the Court agreed to review the matter. The Court has now completed its review and finds the evidence at trial regarding the identification of the firearm to be sufficient.

(Id. at 1). Thus, the Court denied the motion to the extent Petitioner sought to overturn his conviction.

The parties reconvened for sentencing on October 24, 2017. (See Crim. Doc. 86, Sentencing Transcript Vol. II). The Court reiterated that it had

reviewed the evidence and found it sufficient to sustain the conviction. (Id. at 14). The Court determined that Petitioner qualified for an enhanced sentence under the ACCA based on his prior convictions, which included multiple convictions for armed robbery, aggravated assault, armed carjacking, and attempted robbery. (Id. at 8–11); (see also Crim. Doc. 56, Presentence Investigation Report [PSR] ¶ 33). The Court sentenced Petitioner to the mandatory minimum term of 180 months in prison. (Crim. Doc. 86 at 16–17; Crim. Doc. 71, Judgment).

Petitioner appealed his conviction and sentence to the Eleventh Circuit. He argued that (1) the mix-up with the firearm's serial number rendered the evidence insufficient to support his conviction and (2) the Court should have declared another mistrial based on a comment by witness Maurice Hogan about Petitioner's criminal history. Hogan, 778 F. App'x at 644. The Eleventh Circuit rejected both arguments and affirmed Petitioner's conviction and sentence. Id. at 645–47. Petitioner did not seek certiorari review. The Amended § 2255 Motion timely followed.

## II.    Discussion

Under 28 U.S.C. § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 authorizes a district court to grant relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to

impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C § 2255(a). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979); Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc).

A § 2255 movant "bears the burden to prove the claims in his § 2255 motion." Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015); see also Beeman v. United States, 871 F.3d 1215, 1221–23 (11th Cir. 2017). If "'the evidence does not clearly explain what happened … the party with the burden loses.'" Beeman, 871 F.3d at 1225 (quoting Romine v. Head, 253 F.3d 1349, 1357 (11th Cir. 2001)). A § 2255 movant will not be entitled to relief, or an evidentiary hearing, "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted).

"[A] collateral attack is the preferred vehicle for an ineffective-assistance claim." United States v. Padgett, 917 F.3d 1312, 1318 (11th Cir. 2019). To establish ineffective assistance of counsel, a § 2255 petitioner must show both: (1) that his counsel's performance was constitutionally deficient, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Martin v. United States, 949 F.3d 662,

9

667 (11th Cir. 2020). In determining whether counsel was deficient, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing Strickland, 466 U.S. at 687). "In the light of the 'strong presumption' that counsel's actions [fell] within the wide range of constitutionally adequate assistance, a movant 'must establish that no competent counsel would have taken the [challenged] action.'" Khan v. United States, 928 F.3d 1264, 1272 (11th Cir. 2019) (quoting Chandler v. United States, 218 F.3d 1305, 1314-15 (11th Cir. 2000) (en banc)), cert. dismissed, 140 S. Ct. 339 (2019). To demonstrate prejudice, the petitioner must show a reasonable likelihood that the result of the proceeding would have been different but for counsel's error. Martin, 949 F.3d at 667 (citing Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). The Court considers the totality of the evidence in determining whether a petitioner has established deficient performance and prejudice. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

**A. Ground One**

First, Petitioner claims that trial counsel, Ms. Yazgi, gave ineffective assistance by failing to call a witness who allegedly would have testified in Petitioner's favor. (Civ. Doc. 10 at 4). Petitioner asserts that Ms. Yazgi should

10

have called Detective Derek Pratico, a cross-sworn JSO and ATF task force officer who was one of the government's investigators. Petitioner alleges that Pratico would have given testimony that proved he was innocent of the gun charge. (Id.). According to Petitioner, no reasonable attorney would have failed to call this witness. In support, Petitioner cites Exhibits A, B, and C to his original § 2255 Motion. Exhibit A (Civ. Doc. 1-1) is an ATF interstate nexus report concerning the .40 caliber Glock, serial number KTV892, which Petitioner raised after trial because it contains the name "Jerminh Mose Johnson" under "title of investigation." Exhibit B (Civ. Doc. 1-2) is an ATF report written by Pratico, in which Pratico summarizes an interview with Darien Thomas, the civilian intern who witnessed the crime during a "ride along" with Officer Mills. Exhibit C (Civ. Doc. 1-3) is part of a transcript of Pratico's grand jury testimony.

Petitioner does not elaborate in the Amended § 2255 Motion on why counsel should have called Pratico to testify. But Petitioner suggests an answer in his Reply brief. Because Pratico testified before the grand jury that Darien Thomas, not Officer Mills, saw Petitioner jump out of the car with a gun (Civ. Doc. 1-3 at 3, 5; Civ. Doc. 1-2), the defense could have called Pratico to impeach Officer Mills's testimony that he also saw Petitioner exit the vehicle with a gun. (See Civ. Doc. 13 at 6–7).

11

This claim does not merit relief. "The mere fact that other witnesses might have been available ... is not a sufficient ground to prove ineffectiveness of counsel." Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (citation omitted). "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Id. at 1512. "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[6] Even if counsel's failure to call a witness "appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) (quotation marks omitted). Additionally, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (cited by Estiven v. Sec'y, Dep't of Corr., No. 16-14056-D, 2017 WL 6606915, at *4 (11th

---

[6]       Decisions issued by the former Fifth Circuit Court of Appeals on or before September 30, 1981 are binding in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

Cir. Sept. 28, 2017) (denying COA)).

Ms. Yazgi's decision not to call Pratico was neither deficient nor prejudicial. Pratico was not present for the traffic stop that led to Petitioner's arrest. Any testimony he could have offered about who saw what would have been based on hearsay. It is unclear whether Petitioner could have offered Pratico's hearsay testimony as extrinsic evidence to impeach Officer Mills. <u>See</u> <u>Bratt v. Genovese</u>, 782 F. App'x 959, 967–68 (11th Cir. 2019); <u>see also</u> Fed. R. Evid. 608(b). Even if he could have, Pratico's testimony would not have been helpful. Assuming Pratico would have testified at trial consistently with his grand jury testimony, he would have said that Darien Thomas, not Officer Mills, saw Petitioner exit the Ford Explorer holding a gun. Whatever Petitioner might have gained by using Pratico to impeach Officer Mills he would have lost by reinforcing Thomas's testimony that Thomas witnessed Petitioner exit the vehicle with a gun. Ms. Yazgi, an experienced federal public defender, could have reasonably decided that Pratico's testimony would not have been beneficial. The Court cannot say that failing to call Pratico was "so patently unreasonable that <u>no</u> competent attorney would have chosen it." <u>Dingle,</u> 480 F.3d at 1099 (emphasis added).

Moreover, Ms. Yazgi thoroughly cross-examined Officer Mills and challenged his credibility. (<u>See</u>, <u>e.g.</u>, Crim. Doc. 83 at 52–54, 65, 67–76, 84–85; Crim. Doc. 84 at 23–29). Ms. Yazgi argued that, based on the angle of his line-

13

of-sight from the driver's seat of his patrol car to the passenger-side of the Ford Explorer (where Petitioner jumped out), Officer Mills could not have seen what he claimed to see. The jury returned a guilty verdict all the same. The jury either determined that Officer Mills's testimony was credible or it found sufficient other evidence of guilt. Indeed, two eyewitnesses testified that they saw Petitioner exit the car holding a gun. Darien Thomas, like Officer Mills, testified that he saw Petitioner jump out of the Ford Explorer with a gun in hand, which Petitioner tossed as he stumbled. (Crim. Doc. 83 at 180–82). A firearm was found in the grass on the passenger's side of the vehicle, where it is undisputed Petitioner exited the car. (Id. at 33, 40–41, 184–85). And a magazine was located on the passenger-side floorboard, where it is undisputed Petitioner had been sitting. (Id. at 43, 186). There is not a reasonable probability that, had Ms. Yazgi called Pratico to impeach Officer Mills, the jury would have reached a different verdict. Strickland, 466 U.S. at 694. Relief on this ground is due to be denied.

**B. Grounds Two and Three**

Petitioner raises related claims in Grounds Two and Three of the Amended § 2255 Motion. In Ground Two, Petitioner alleges that trial counsel unreasonably failed to inform him of exculpatory and impeachment evidence. (Civ. Doc. 10 at 5). In Ground Three, he alleges that trial counsel unreasonably failed to investigate exculpatory evidence, and that failing to do so prejudiced

him. (Id. at 6–7). Petitioner does not describe the exculpatory evidence that counsel failed to disclose or investigate, but he cites Exhibits A and B to his original § 2255 motion. (Id. at 5, 7). Exhibit A, as noted earlier, is an ATF interstate nexus report concerning the .40 caliber Glock, serial number KTV892, which contains the name "Jerminh Mose Johnson" in the "title of investigation." (Civ. Doc. 1-1). Exhibit B is an ATF report written by Detective Pratico, where Pratico summarizes an interview of Darien Thomas. (Civ. Doc. 1-2). In Exhibit B, Pratico wrote that the firearm bore serial number KYU892, the same incorrect serial number in Officer Mills's police report.

Petitioner fleshes out his claims in his Reply. (Civ. Doc. 13 at 7–15). Petitioner argues that trial counsel failed to investigate or inform him about Pratico's grand jury testimony, where Pratico confirmed that the government "g[o]t the serial number right on the Glock" (Civ. Doc. 1-3 at 6), meaning the KTV892 serial number alleged in the Indictment, even though Pratico wrote down serial number KYU892 in his ATF report (Civ. Doc. 1-2). Petitioner also argues that counsel failed to investigate or inform him about the ATF interstate nexus report (Civ. Doc. 1-1), which according to Petitioner shows that the gun charged in the Indictment belonged to another person ("Jerminh Mose Johnson"). Petitioner argues that counsel had a duty to disclose this "exculpatory" evidence to him and that the outcome of trial would have been different had she presented it to the jury.

15

Petitioner also asked the Court to take notice of two letters he wrote the Court during the criminal proceedings (Civ. Doc. 38, Motion to Expand the Record; Crim. Doc. 27-1, First Letter; Crim. Doc. 54-1, Second Letter). The Second Letter foreshadowed the allegations in Grounds Two and Three. In this letter, Petitioner accused Ms. Yazgi of withholding information that "prove[d] that the firearm in [the] Federal Indictment IS NOT the firearm in [the] JSO … aresst [sic] & booking report," referring to the serial number discrepancy in Officer Mill's police report. (Crim. Doc. 54-1) (emphasis in original). Petitioner based the accusation on the fact that he requested, and received, a second copy of discovery from Ms. Yazgi, and that upon reviewing the second copy, he discovered it contained information that was not in the first copy. (Id.).

The allegations in Grounds Two and Three generally reprise issues that were raised, discussed, or litigated at various points during and after trial. The serial number issue was unsuccessfully argued at trial. And a Magistrate Judge conducted a hearing on the Second Letter, at which Ms. Yazgi stated on record that she did not lie to Petitioner or withhold information. (Crim. Doc. 87 at 7–8). Responding to Petitioner's accusation, Ms. Yazgi said:

> I don't really have much to say. I haven't lied to Mr. Hogan. I have provided him everything he's asked for. We had a trial within the 70-day speedy trial time period, which he wanted. I put on the defense that he wanted. We litigated the problems with the serial number, which was certainly part of our defense.

> The jury didn't seem to agree with our position that they had messed up and put the wrong firearm into evidence and, therefore, they could not prove that the firearm at the scene was actually an operable or real firearm.

(Id. at 8). Petitioner did not dispute Ms. Yazgi's statement that she put on the defense he wanted. The Magistrate Judge remarked that, given Ms. Yazgi's "stellar" reputation, he "ha[d] a hard time believing any of [Petitioner's] allegations," (id. at 9), and that he could find no fault with how Ms. Yazgi had handled the case (id. at 11). The Magistrate Judge suggested that Petitioner's second copy of discovery contained information not in the first copy simply because the government has an ongoing discovery obligation, meaning material might be added as time goes on. (Id. at 9). Ultimately, the Court appointed new counsel based on Petitioner's accusations (consistent with Ms. Yazgi's recommendation), but it did not find the accusations themselves credible.

Petitioner's allegations, together with the record, do not support relief on Grounds Two and Three. The record casts serious doubt on Petitioner's allegations that Ms. Yazgi performed deficiently by failing to investigate or inform him about certain information. Nevertheless, even if Ms. Yazgi did perform unreasonably by failing to investigate Pratico's grand jury testimony and the interstate nexus report, or by failing to inform Petitioner about the same, there is not a reasonable likelihood the outcome of trial would have been different absent those failures.

### 1. *Pratico's Grand Jury Testimony*

Petitioner was not prejudiced by counsel's failure to investigate or inform him about Pratico's grand jury testimony regarding the gun's serial number. This claim is another version of his failed argument about the serial number discrepancy in Officer Mills's police report. Ms. Yazgi brought the serial number mix-up to the jury's and the Court's attention, but the argument failed.

At trial, Ms. Yazgi confronted Officer Mills about the fact that the serial number of the gun charged in the Indictment was KTV892, but the serial number he wrote down in his police report was KYU892. (Crim. Doc. 83 at 70–76). Officer Mills explained that he made a typo when he entered a "Y" instead of a "T" (because these letters are adjacent on a standard keyboard) and that he mistook the "V" for a "U." (Id. at 73–75). Ms. Yazgi moved for JOA based on the mismatched serial numbers, arguing that it showed the government had not proven that Petitioner possessed the firearm charged in the Indictment. (Id. at 219–20). The Court denied the motion, finding that the evidence was sufficient for the case to go to the jury. (Id. at 222). Ms. Yazgi raised the serial number mix-up during closing arguments. (Crim. Doc. 84 at 32–33). Based on the mismatched serial numbers, and the fact that several hours passed before Officer Faulkner deposited the gun in the JSO's property storage room, Ms. Yazgi suggested that the police switched up the firearms and put the wrong gun into evidence. (Id.). The argument did not persuade the jury, which returned a

guilty verdict.

On appeal, the Eleventh Circuit affirmed that the evidence was sufficient to sustain Petitioner's conviction despite the serial number discrepancy. The court explained:

> Based on the discrepancy between the serial number of the gun listed in Officer Mills's report and the serial number recorded by Officer Faulkner and Special Agent Latham and charged in the indictment, Hogan contends that the trial evidence was insufficient because "the government failed to establish that the firearm that the Appellant allegedly possessed was the firearm tested by ATF, and so, did not prove it travelled in interstate or international commerce, or was actually a 'firearm' within the definition of the statute." That argument—essentially a reprise of Hogan's trial defense—fails because a reasonable jury could have accepted Officer Mills's testimony that the incorrect serial number in his report was a typo.
>
> The trial evidence set forth a straightforward chain of events linking Hogan to the gun charged in the indictment and tested by ATF. The testimony at trial established that Officer Mills and Darien Thomas saw Hogan throw a gun as he exited the Ford Explorer; Thomas saw the gun hit the ground and remained near it until Officer Mills retrieved it; Officer Mills photographed the gun before Officer Faulkner took it; Officer Faulkner entered the gun into evidence and recorded its serial number as KTV892; and Special Agent Latham tested the "KTV892" gun. A reasonable jury could have relied on this evidence to conclude that Special Agent Latham tested the gun that Hogan possessed, and therefore could have found Hogan guilty.

Hogan, 778 F. App'x at 645. The court reasoned that "the jury was free to accept Officer Mills's testimony that the serial number in his report was a typo—indeed, the minor differences between 'KTV892' and 'KYU892' make that account entirely believable." Id. The court concluded that "Hogan was free to, and did, argue his 'different guns' defense to the jury. But the jury was free to, and did, reject that defense, and sufficient evidence supported its guilty

19

verdict." <u>Id.</u> at 646.

Detective Pratico's grand jury testimony and his ATF report (Civ. Doc. 1-2) merely reflect the same discrepancy between serial number KTV892 and the serial number in Officer Mills's police report (KYU892). Because the discrepancy did not persuade the jury, there is not a reasonable likelihood the jury would have acquitted Petitioner had Ms. Yazgi investigated Pratico or called him to testify about the same discrepancy. "[A] petitioner cannot satisfy the prejudice prong of the <u>Strickland</u> test with evidence that is merely cumulative of evidence already presented." <u>Rose v. McNeil</u>, 634 F.3d 1224, 1243 (11th Cir. 2011). Petitioner is not entitled to relief on this claim.

### 2. *The ATF Interstate Nexus Report*

Likewise, there is no reasonable likelihood that the ATF interstate nexus report would have changed the trial's result. (Civ. Doc. 1-1). In the report, ATF agent Brian MacCarthy wrote that he examined a Glock model 22 .40 caliber pistol, serial number KTV892, and determined the gun had moved in interstate or foreign commerce because it was manufactured in Austria. (<u>Id.</u>). Under "Title of Investigation," the report says, "(Z5) JOHNSON, Jerminh Mose," investigation number 767010–16–0027. (<u>Id.</u>). Petitioner argues that the report proves he did not possess the firearm charged in the Indictment.

Petitioner raised this very issue in a July 2017 letter to the Court and at the beginning of his sentencing hearing. (Crim. Doc. 85 at 2–11). The United

States explained:

> MR. TALBOT:      That is a typo. That is – what happened was the person doing the interstate nexus wrote the wrong person on the top left. That investigation number to the right is correct. That's actually the correct investigation number for this case.
>
> THE COURT:      Right.
>
> MR. TALBOT:      So that Johnson has nothing to do with the firearm in this case. This is the interstate nexus report. The ATF agent made a typographical error when preparing this report.
>
> We turned over in discovery just the – we didn't change it. We turned over – typo and all. Candidly, I didn't notice it when I turned it over.
>
> So the – but the evidence in the case, of course, is, as the testimony came out, that the gun found there and collected in evidence by JSO at the scene was the Glock identified by a serial number that was introduced in the case.
>
> THE COURT:      So the evidence in the case, as I – as you're saying – the evidence in the case was that the gun that was recovered at the scene is the Glock that's identified in this narrative report, including the serial number?
>
> MR. TALBOT:      Yes. And, more important – and whether – you know, the report doesn't control. The indictment controls. So the question is: Did we prove that the gun in the indictment was the firearm recovered at the scene? …

(Id. at 8–9).

Although it was "out of procedure," the Court agreed to review the evidence to determine if it was sufficient to support the conviction, considering the error in the interstate nexus report and the serial number discrepancy. (Id. at 11–12, 14–15). The Court undertook that review and concluded the evidence still supported the jury's verdict. (Crim. Doc. 64; Crim. Doc. 86 at 14). Petitioner

did not appeal the Court's post-trial ruling on the sufficiency of the evidence. Hogan, 778 F. App'x at 645 n.2.

Ms. Yazgi did not bring to the jury's attention that the interstate nexus report named "Jerminh Mose Johnson" in the title of investigation. But, given the testimony and the arguments that were presented, there is not a reasonable likelihood the jury would have acquitted Petitioner even if she had. Had Ms. Yazgi informed the jury that the report's title of investigation named "Jerminh Mose Johnson," the United States would have countered that this was a typographical error and pointed out that the report contained the correct investigation number for Petitioner's case.

Moreover, "[t]he trial evidence set forth a straightforward chain of events linking Hogan to the gun charged in the indictment and tested by ATF." Hogan, 778 F. App'x at 645. Officer Mills and Darien Thomas each testified that they witnessed Petitioner exit the Ford Explorer holding a gun, which he tossed as he stumbled to the ground. (Crim. Doc. 83 at 33, 63–64, 180–82, 189). Thomas saw the gun land in the grass and stood by it until Officer Mills retrieved it. (Id. at 184–85, 204–05). Officer Mills photographed the gun and the surrounding scene before Officer Faulkner took the gun into evidence. (Id. at 37–45, 71). Officer Faulkner entered the gun into evidence and recorded the serial number KTV892 (id. at 157–63, 172), the same serial number alleged in the Indictment. ATF Special Agent Mark Latham tested the "KTV892" gun and confirmed it

22

was an operable firearm, which had been manufactured in Austria and imported to the United States through Smyrna, Georgia. (Id. at 210–14). Given this straightforward chain of events linking Petitioner to the "KTV892" gun, there is not a reasonable probability the jury would have taken the interstate nexus report to mean that, contrary to all the evidence, Petitioner did not possess the gun. See Strickland, 466 U.S. at 694. Because Petitioner fails to establish prejudice under Strickland, relief on Grounds Two and Three is due to be denied.

## C. Ground Four

Next, Petitioner argues that his conviction violates Rehaif v. United States, 139 S. Ct. 2191 (2019). (Civ. Doc. 10 at 8, 9; Civ. Doc. 13 at 1–6, 15–18). The Supreme Court decided Rehaif on June 21, 2019, three days after the Eleventh Circuit Court of Appeals affirmed his conviction and sentence.

In Rehaif, the Supreme Court held that to convict a defendant for unlawful possession of a firearm, the government must prove not only "that the defendant knew he possessed a firearm," but also that he knew he belonged to one of the nine categories of persons that § 922(g)[7] prohibits from possessing a firearm. 139 S. Ct. at 2194, 2200. In doing so, the Supreme Court overturned

---

[7]    Section 922(g)(1) makes it "unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). Section 924(a)(2) provides that "[w]hoever knowingly violates subsection … (g) … of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2).

the law of the Eleventh Circuit (and several others), which had held that the government did not have to prove the defendant knew of his prohibited status. See, e.g., United States v. Jackson, 120 F.3d 1226, 1229 (11th Cir. 1997). The Supreme Court reasoned that since § 924(a)(2) provides that anyone who "knowingly violates" § 922(g) will be fined or imprisoned for up to 10 years, the word "knowingly" applies to the status element, not merely the possession element. Rehaif, 139 S. Ct. at 2194, 2195–96. But the Supreme Court also reasoned that a basic principle of criminal law is that a scienter requirement applies to each element that goes to the wrongfulness of an offense (except for minor regulatory offenses). Id. at 2196–97. And for § 922(g), the status element goes to the heart of what makes the act of possessing a firearm a crime, because merely possessing a gun is otherwise lawful. Id. at 2197.

Here, the Indictment charged that Petitioner "did knowingly possess, in and affecting commerce, a firearm, that is, A Glock, .40 caliber pistol, serial number KTV892, after having been convicted of a crime punishable by imprisonment for a term exceeding one year." (Crim. Doc. 1 at 1). The charge cited 18 U.S.C. § 922(g)(1) and § 924(e) (the ACCA provision). (Id. at 1, 2). But the Indictment neither alleged that Petitioner knew he was a felon nor cited § 924(a)(2). Because the Indictment did not allege that Petitioner knew of his status as a felon, it contained a Rehaif error.

24

Petitioner argues that the Indictment failed to give notice of the charged offense because it did not cite § 924(a)(2) and did not charge that he knowingly violated § 922(g)(1), i.e., that he knew he was a felon. (Civ. Doc. 10 at 8; Civ. Doc. 13 at 1–6; 15–18). He also argues that the Indictment failed to charge a federal crime – a jurisdictional defect – because a "stand-alone violation of 922(g)(1)" is not a prosecutable offense. Citing Rehaif, Petitioner also claims to be actually innocent of violating § 922(g)(1).

The government counters that Petitioner procedurally defaulted these claims because he failed to raise them on direct appeal. (Civ. Doc. 12 at 6–7). The government argues that to overcome the default, Petitioner must satisfy the cause-and-prejudice standard or the actual innocence exception, neither of which can he do. (Id. at 7–10). The government argues the claim is meritless in any event. (Id. at 19–23).

The Court need not decide whether Petitioner procedurally defaulted his Rehaif claims or whether he can overcome the default. Even if the claims are not defaulted, they fail on the merits under the harmless error standard applicable on collateral review. See Brecht v. Abrahamson, 507 U.S. 619, 637–38 (1993); see also United States v. Arthurs, 823 F. App'x 692, 696–97 (10th Cir. 2020) (applying Brecht's harmless error standard to a Rehaif claim raised in a § 2255 motion).

> On collateral review, the harmless error standard mandates that "relief is proper only if the ... court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict. There must be more than a reasonable possibility that the error was harmful." Davis v. Ayala, 576 U.S. 257, 267–68, 135 S. Ct. 2187, 192 L.Ed.2d 323 (2015) (internal quotation marks and citations omitted); Ross v. United States, 289 F.3d 677, 682 (11th Cir. 2002) (per curiam) (applying this standard to a § 2255 motion). Put another way, the court may order relief only if the error "resulted in actual prejudice." [Brecht, 507 U.S. at 637] (internal quotation marks and citation omitted).

Granda v. United States, 990 F.3d 1272, 1292 (11th Cir. 2021). Notably, "[t]he burden of demonstrating in a collateral proceeding that an [error] violated the petitioner's due process rights is 'greater than the showing required to establish plain error on direct appeal.'" Galvan v. Cockrell, 293 F.3d 760, 765 (5th Cir. 2002) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). Therefore, if a claim would fail under plain error review, it would necessarily fail under Brecht's harmless error standard.

A Rehaif error does not warrant a presumption of prejudice. Following Rehaif, the Supreme Court and the Eleventh Circuit have clarified that a Rehaif error – whether in the indictment, jury instructions, or a plea colloquy – is a nonstructural error subject to plain error review on direct appeal (if unpreserved) or harmless error review (if preserved). Greer v. United States, 141 S. Ct. 2090, 2099–2100 (2021); United States v. Leonard, 4 F.4th 1134, 1144

(11th Cir. 2021).[8] The Supreme Court also held that in determining whether a Rehaif error affected a defendant's substantial rights under plain error review, a court may examine the entire record, not just the trial record. Greer, 141 S. Ct. at 2098; see also United States v. Reed, 941 F.3d 1018, 1021 (11th Cir. 2019) ("As the 'reviewing court[, we] may consult the whole record when considering the effect of any error on [Reed's] substantial rights.'" (quoting United States v. Vonn, 535 U.S. 55, 59 (2002))).

Petitioner argues that the Indictment failed to give notice of the charged offense because it did not allege that he knew he was a felon. The Eleventh Circuit has held, on similar facts, that such an error did not affect the defendant's substantial rights under plain error review. See, e.g., United States v. Innocent, 977 F.3d 1077, 1082–84 (11th Cir. 2020); Reed, 941 F.3d at 1020–22. Here, Petitioner cannot "prov[e] a reasonable probability that he would have obtained a different result but for" the Indictment's failure to allege that he knew he was a felon "because circumstantial evidence establishes that [he] knew of his felon status." Innocent, 977 F.3d at 1082 (internal citation omitted).

---

[8]     "Under the plain error standard, 'there must be (1) error, (2) that is plain, and (3) that affects [the defendant's] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" United States v. Moore, 954 F.3d 1322, 1329 (11th Cir. 2020) (citation omitted).
        Under the more defendant-friendly harmless error standard, which applies to errors that were preserved in the trial court, "the government bears the burden of showing that an error was 'harmless beyond a reasonable doubt.'" Leonard, 4 F.4th at 1144 (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).

For starters, Petitioner was a convicted felon and he stipulated that he was. (Crim. Doc. 83 at 227–28). "If a person is a felon, he ordinarily knows he is a felon," a "simple truth [that] is not lost on juries" or defendants. Greer, 141 S. Ct. at 2097. Second, "someone who has been convicted of felonies repeatedly is especially likely to know he is a felon." Innocent, 977 F.3d at 1082 (citation omitted). Petitioner had 22 felony convictions before this case: a 1993 conviction for escape from a juvenile detention facility and a slate of 21 felony convictions from a 1994 crime spree. (Crim. Doc. 1 at 1–2; Crim. Doc. 56 (PSR) ¶¶ 32–33). In the latter case, he was convicted of eight counts of armed robbery, eight counts of possession of a firearm by a convicted felon, one count of aggravated assault with a deadly weapon, one count of armed carjacking, one count of attempted armed robbery, one count of forgery, and one count of uttering a forged instrument. (Crim. Doc. 56 ¶ 33). The fact alone that "he had previously been convicted of being a felon in possession of a firearm … is strong evidence he knew he was a felon." Innocent, 977 F.3d at 1083 (citing United States v. Hicks, 958 F.3d 399, 402 (5th Cir. 2020)). Third, "serving more than a year in prison provides circumstantial evidence of knowledge of felon status." Id. (citations omitted). Petitioner served over 20 years in prison for his 1994 convictions. (Crim. Doc. 56 ¶ 33). He left prison on November 21, 2014, only a year and three months before he committed the instant offense. Petitioner could not have so soon forgotten his lengthy term in prison. Fourth, Petitioner

28

"behaved in a way that suggested he knew he was not allowed to possess a gun." <u>Innocent</u>, 977 F.3d at 1083. The trial evidence showed that when the police pulled over the vehicle he was riding in, Petitioner exited the vehicle, dropped the gun, and fled the police. In short, there is overwhelming circumstantial evidence that Petitioner knew he was a felon and knew he was not supposed to have a firearm. Indeed, Petitioner never alleges that he did not know he was a felon. Petitioner cannot show plain error, let alone "actual prejudice," based on the Indictment's failure to allege that Petitioner knew he was a felon.

Petitioner also argues that the Indictment did not charge a federal offense, thereby depriving the Court of subject matter jurisdiction, because it neither cited § 924(a)(2) nor alleged that he knew he was a felon. The Eleventh Circuit has repeatedly rejected the same argument. <u>Leonard</u>, 4 F.4th at 1142–43; <u>United States v. Morales</u>, 987 F.3d 966, 978–79 (11th Cir. 2021); <u>Innocent</u>, 977 F.3d at 1084; <u>United States v. Moore</u>, 954 F.3d 1322, 1336–37 (11th Cir. 2020). The Eleventh Circuit has determined that § 922(g) is a complete, self-contained offense, such that an indictment's failure to cite § 924(a)(2) does not mean it has failed to charge a federal crime. <u>Leonard</u>, 4 F.4th at 1142–43; <u>Morales</u>, 987 F.3d at 979. The court also explained that omitting an element from an indictment, such as failing to charge that the defendant knew he was a convicted felon, is a non-jurisdictional defect. <u>Leonard</u>, 4 F.4th at 1142, 1143; <u>Morales</u>, 987 F.3d at 978–79; <u>Moore</u>, 954 F.3d at 1336–37. Here, the Indictment

29

alleged that on February 26, 2016, in Duval County, Florida, Petitioner knowingly possessed a firearm "after having been convicted of a crime punishable by imprisonment for a term exceeding one year," in violation of 18 U.S.C. § 922(g)(1) and § 924(e). (Crim. Doc. 1). While the Indictment did not allege that Petitioner knew he was a felon, it did enough to invoke the Court's jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231; Leonard, 4 F.4th at 1142–43; Moore, 954 F.3d at 1332–33.

To the extent Petitioner argues he is "actually innocent" of the offense based on the Rehaif error, that argument is meritless too. The actual innocence exception "is exceedingly narrow in scope as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted). "To show actual innocence of the crime of conviction, a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of the new evidence of innocence." McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). This exception is supposed to "remain 'rare' and … only be applied in the 'extraordinary case.'" Schlup, 513 U.S. at 321. As shown above, there is abundant evidence that Petitioner knew he was a felon. The Rehaif error in the Indictment does not render Petitioner actually innocent.

30

The <u>Rehaif</u> error here was harmless by any measure. Petitioner is thus not entitled to relief.

**D. First Motion for Leave to Supplement: Vagueness Claim**

In the First Motion for Leave to Supplement, Petitioner argues that § 922(g)(1) is void for vagueness as applied to the facts of his case. (Civ. Doc. 17). He claims the statute "failed to give fair warning of any 'specific' proscribed contemplated conduct." (<u>Id.</u> at 3). He argues that the Eleventh Circuit gave § 922(g) "a vague interpretation" when it held in <u>United States v. Deleveaux</u>, 205 F.3d 1292, 1298 (11th Cir. 2002), that a violation of § 922(g) requires no specific intent.[9] Petitioner contends that <u>Deleveaux</u> conflicts with <u>United States v. Lanier</u>, 520 U.S. 259 (1997). (Civ. Doc. 17 at 3–4).[10] Petitioner also claims that § 922(g) is vague in terms of what qualifies as proscribed "possession" of a firearm. (Civ. Doc. 17 at 8). He tries to tie the alleged vagueness of the statute to the pre-<u>Rehaif</u> lack of a <u>mens</u> <u>rea</u> requirement for § 922(g)'s status element, but he does not argue that the status element itself is vague.

---

[9]      Petitioner also cites <u>United States v. Hedges</u>, 912 F.2d 1397 (11th Cir. 1990), but <u>Hedges</u> has nothing to do with § 922(g).

[10]      In <u>Lanier</u>, the Supreme Court held that in a prosecution under 18 U.S.C. § 242 for criminally violating the constitutional rights of another person, the defendant has fair warning that his conduct is criminal "if, but only if, 'in the light of pre-existing law the unlawfulness [under the Constitution is] apparent.'" 520 U.S. at 271–72 (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). However, fair warning does not require the existence of prior case law with indistinguishable facts. <u>Id.</u> at 269.

Petitioner could have raised a vagueness challenge to § 922(g) before this Court or on direct appeal, but he did neither. Thus, his vagueness claim is procedurally defaulted, and Petitioner has not established cause for or actual prejudice resulting from the default. See Granda, 990 F.3d at 1285–91 (holding that § 2255 movant procedurally defaulted his void-for-vagueness challenge to § 924(c), and he could not overcome the default under the cause-and-prejudice standard). Nor has Petitioner shown that he can overcome the procedural default under the actual innocence exception.

The claim is meritless in any event. A criminal law is unconstitutionally vague if "it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." Johnson v. United States, 135 S. Ct. 2551, 2556 (2015) (citation omitted). "Statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." United States v. Dunn, 596 F.3d 1283, 1290 (11th Cir. 2010) (citation omitted). The vagueness doctrine does not "mean that the statute must define every factual situation that may arise." United States v. Nelson, 712 F.3d 498, 508 (11th Cir. 2013) (citation omitted).

Section 922(g)(1) makes it unlawful for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or

ammunition." 18 U.S.C. § 922(g)(1). Petitioner does not point to any case, let alone controlling authority, holding that any part of this definition is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." <u>Johnson</u>, 135 S. Ct. at 2556. Courts have repeatedly rejected vagueness challenges to § 922(g)(1), including to the "possession" element. <u>See</u>, <u>e.g.</u>, <u>United States v. Vereen</u>, 920 F.3d 1300, 1312 (11th Cir. 2020) (on plain error review, finding no binding precedent holding that § 922(g)'s use of the term "unlawful possession" was unconstitutionally vague because of the lack of a defense for innocent transitory possession); <u>United States v. Rogers</u>, 41 F.3d 25, 29 (4th Cir. 1994) (rejecting vagueness challenge to § 922(g) insofar as the statute proscribes constructive possession of a gun, stating, "We think that the term 'possession' concretely describes the conduct proscribed by the statute."). Section 922(g)(1) is not

> so vague that a person of ordinary intelligence would have to guess at its meaning. As applied to [Petitioner], the plain language of § 922(g)(1) makes it clear that it is unlawful for (a) a person who has been convicted of a felony (b) to possess any firearm or ammunition that has moved in interstate commerce. These requirements are straightforward and sufficient to provide fair warning of the proscribed conduct.

<u>United States v. Smith</u>, 770 F. App'x 955, 960 (11th Cir. 2019). Petitioner's vagueness challenge is meritless.

33

**E. Second Motion for Leave to Supplement: Actual Innocence**

Finally, Petitioner moves for leave to add a claim that he is actually innocent of the § 922(g) conviction. (Civ. Doc. 42). Petitioner argues that Exhibit A, the ATF interstate nexus report that names "Jerminh Mose Johnson," proves that he is actually innocent of the offense. (Civ. Doc. 42; Civ. Doc. 45 (clarifying that Petitioner meant to refer to Exhibit A, not Exhibit B, in support of his actual innocence claim)). The United States opposes the Second Motion for Leave to Supplement. (Civ. Doc. 44).

Petitioner's challenge is, in substance, an attack on the sufficiency of the evidence. The challenge is procedurally defaulted because he could have raised this claim on direct appeal but did not. See McKay, 657 F.3d at 1196; see also Hogan, 778 F. App'x at 645 n.2 (noting that Petitioner did not appeal his conviction based on the error in the interstate nexus report naming "Jerminh Mose Johnson"). Petitioner does not claim he can overcome the default under the cause-and-prejudice exception.

To the extent Petitioner tries to overcome the procedural default based on actual innocence, that claim fails. To satisfy the actual innocence exception, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324. He also "must show that it is more likely than

34

not that no reasonable juror would have convicted him in the light of the new evidence." <u>Id.</u> at 327. First, the ATF interstate nexus report is not new reliable evidence of innocence. The United States explained at sentencing that the name "Jerminh Mose Johnson" was a typographical error, and all sides agreed that the report was disclosed before trial. (Crim. Doc. 85 at 2–10). Second, it is not probable "that <u>no</u> reasonable juror would have convicted" Petitioner in light of the ATF interstate nexus report. <u>Schlup</u>, 513 U.S. at 327 (emphasis added). The trial evidence established a straightforward chain of events connecting Petitioner to the gun charged in the Indictment. <u>See</u> <u>Hogan</u>, 778 F. App'x at 645. Any reasonable juror could have concluded that the name "Jerminh Mose Johnson" under the report's title of investigation was a typographical error, which could not overcome the evidence of Petitioner's guilt.

As a result, the Second Motion for Leave to Supplement is due to be denied as futile. The claim is procedurally defaulted and it does not satisfy the actual innocence standard.

## IV.   Conclusion

Having considered each of Petitioner's claims, and finding that none warrants relief under 28 U.S.C. § 2255, it is hereby **ORDERED:**

1. Petitioner Raimundo Antonio Hogan's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 10), as supplemented (Civ. Doc. 17) is **DENIED**.

2. Petitioner's Motion for Leave to File Supplemental Authorities (Civ. Doc. 41) is **GRANTED** to the extent the Court has considered them. Petitioner's Second Motion for Leave to Supplement (Civ. Doc. 42) is **DENIED** as futile.

3. The Clerk shall enter judgment in favor of the United States and against Petitioner, and close the file.

4. If Petitioner appeals this Order, the Court denies a certificate of appealability (COA). Because this Court has determined that a COA is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[11]

**DONE AND ORDERED** at Jacksonville, Florida this 4th day of October, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

---

[11] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

Lc 19
C:
Counsel of record
Pro se petitioner